**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOSE LOPEZ HERNANDEZ,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>FEDERAL BUREAU OF PRISONS, et al.,<br><br>　　　　Defendants. | Case No.: 1:15-cv-00573-BAM (PC)<br><br>SCREENING ORDER REQUIRING PLAINTIFF TO EITHER FILE AMENDED COMPLAINT OR NOTIFY COURT OF WILLINGNESS TO PROCEED ONLY ON COGNIZABLE CLAIMS (ECF No. 1)<br><br>**THIRTY (30) DAY DEADLINE** |

**I.   Introduction, Screening Requirement and Standard**

　　Plaintiff Jose Lopez Hernandez is a former federal prisoner proceeding pro se in this action brought pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999 (1971), which provides a remedy for violation of civil rights by federal actors. Plaintiff has consented to magistrate judge jurisdiction. (ECF No. 14.)

　　Plaintiff initiated this action on March 30, 2015. Plaintiff's complaint was originally filed in the United States District Court for the Southern District of Indiana, Terre Haute Division. Plaintiff was housed at the United States Penitentiary, Terre Haute ("USP Terre Haute") at the time he filed this action. Subsequently, this action was transferred to this Court on the grounds that the events at issue allegedly occurred at or near Atwater, California, while Plaintiff was incarcerated at the United States Penitentiary in Atwater ("USP Atwater"). (ECF No. 5.)

Plaintiff's complaint is currently before the Court for screening. The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

While prisoners proceeding pro se in civil rights actions are still entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, the pleading standard is now higher, Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted), and to survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged, Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949 (quotation marks omitted); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949 (quotation marks omitted); Moss, 572 F.3d at 969.

Bivens actions and actions under 42 U.S.C. § 1983 "are identical save for the replacement of a state actor under § 1983 by a federal actor under Bivens." Van Strum v. Lawn, 940 F.2d 406, 409 (9th Cir. 1991). Under Bivens, a plaintiff may sue a federal officer in his or her individual capacity for damages for violating the plaintiff's constitutional rights. See Bivens, 403 U.S. at 397. To state a claim

2

a plaintiff must allege: (1) that a right secured by the Constitution of the United States was violated, and (2) that the alleged violation was committed by a federal actor.

**II.     Plaintiff's Allegations**

Plaintiff is a former federal prisoner. The events alleged in Plaintiff's amended complaint occurred while he was housed at various federal penitentiaries. Plaintiff names the following defendants:  (1) the Federal Bureau of Prisons ("BOP"); (2) H.A. Riso, Jr., Warden, at USP Atwater; (3) Officer Saragosh, Special Investigative Services ("SIS") Officer, at USP Atwater; and (4) Officer Estrada, SIS Officer, at USP Atwater.

In 2007, Plaintiff was infected with and diagnosed as having Hepatitis C. Lab reports show that Plaintiff had Hepatitis C as early as April 7, 2009. Plaintiff was housed at United States Penitentiary, Florence ("USP Florence") in 2009, but did not receive treatment. On April 7, 2009, Derick Phillip, M.D., conducted a lab test on Plaintiff, which revealed that he was afflicted with the Hepatitis C genotype. Dr. Phillip refused to order any treatment.

Plaintiff was housed at USP Atwater for six months in 2011, and the Clinical Director, Jon F. Franco, M.D. refused to treat Plaintiff with medicine called, "Interferon." All other medical staff at other BOP facilities where Plaintiff was housed fell in concert with this established denial. Interferon could have arrested the disease, if not cured it. Warden H.A. Rios, Jr. had knowledge of Plaintiff's affliction.

Defendants H.A. Rios, Jr., Officer Saragosh, and Officer Estrada were told by Plaintiff and others that the Mexican Mafia intended to kill Plaintiff if he went into the prison's general population. Nevertheless, these Defendants ordered Plaintiff to leave the Segregated Housing Unit at USP Atwater, and enter the prison's general population. Consequently, on June 7, 2011, members of the Mexican Mafia attacked and tried to kill Plaintiff, inflicting severe and disabling injuries. Plaintiff was stabbed several times and beaten with clubs, etc., injuring his head, brain, hands, wrist and back. Plaintiff remains partially crippled. Plaintiff will require a lifetime of medical care and attention due to his injuries, and will be unable to return to his former occupation as a wage earner and support himself and his family. These Defendants conspired with members of the Mexican Mafia prison gang.

///

On January 5, 2012, Plaintiff was transferred to Federal Correctional Complex, Butner ("FCC Butner"), and one month later, on February 3, 2012, was evaluated by Ramsey Roscoe, M.D. It was determined that Plaintiff had Hepatitis C. Plaintiff was provided with a psychological warning as to the effects of treatment for Hepatitis C with Interferon. No treatment was provided. Plaintiff attaches a liver ultrasound dated February 2, 2012, which states that Plaintiff had Hepatitis C, and the liver study was unremarkable. (ECF No. 1-10, p. 5.) Plaintiff struggled with the BOP employees at FCC Butner, attempting to receive treatment for Hepatitis C. It got to the point where the BOP would not sign any medical documents or give a reason on paper saying why this medical procedure was being denied.

On August 29, 2012, a biopsy was taken at the request of Sielicki Stanislaw, M.D. The biopsy showed "chronic hepatitis, mild activity (grade 1) with possible early bridging fibrosis (stage 1-2)." (ECF No. 1-5, p. 1.)

On May 14, 2013, Plaintiff received notification of the side effects to the triple therapy which is a prerequisite to the treatment itself, conducted by Allisa M. Marquez, psych. pre-doctorial intern. Then Plaintiff received an administrative note from medical records which showed that Stander Klint, M.D., notified psychology for an updated evaluation dated May 29, 2014. No dual notice of the side effects to treatment are required, and no re-notification of side effects was ever given. Plaintiff was seen on August 14, 2014 by Clinical Director Wilson, but the report was falsified/altered to reflect treatment by Klint, M.D. Neither of them filed a referral for the psychological evaluation. The reports also do not show Hepatitis C. was diagnosed. The neglect and failure to treat Plaintiff caused him to urinate blood.

On or about September 2013, Plaintiff asked Warden J. Andrews why he was not being administered treatment for Hepatitis C, and the response was, "Oh, you have already started to file your administrative remedies, so you will not be getting any treatment, and don't you ever bother me again." (ECF No. 1-1, p. 3.) Warden Andrews and Associate Warden Williams frustrated and stymied Plaintiff's efforts to exhaust his administrative remedies.

Plaintiff was transferred to USP Terre Haute on March 21, 2014, and was seen by Clinical Director William Wilson, M.D., shortly after his arrival. Plaintiff requested treatment for his Hepatitis C. He signed off on the Notice to Adverse Effects of the Treatment, which set up a series of denials by

the staff at USP Terre Haute. Warden J.F. Caraway asserted that there was not enough evidence for treatment.

On May 29, 2014, an algorithm for treatment of Hepatitis C was requested by Stander Klint, M.D., and warnings were to be given to Plaintiff, but Plaintiff did not receive them until September 10, 2014.

On July 1, 2014, Plaintiff emailed the pharmacist inquiring why he was not receiving treatment for Hepatitis C. The pharmacist responded that a non-formulary was sent to the central office and they denied it on June 26, 2014. Plaintiff has learned that the denial was by the regional director for the North Central Region of BOP. Plaintiff emailed others regarding his treatment, including the complex warden, Wilson MD/CD, and Rupska (HAS). On July 31, 2014, Plaintiff emailed health services requesting x-rays of the hand and back besides Percocet, but the only treatment he received for all his illnesses and injuries was Prednisone, which he was told would be discontinued on August 4, 2014. Plaintiff sent another email on August 11, 2014, and the response the same day was sent by someone unwilling to identify themselves.

The reason for refusing to provide Interferon to Plaintiff was based on ethnicity, and not medical considerations or price. The BOP has a policy not to prescribe Interferon to prisoners who are subject to deportation at the expiration of their sentence, including Plaintiff. More than twenty whites Plaintiff spoke to informed him that they were given treatment without any hassle, but African-Americans he talked to were discriminated against just like Mexicans, where this cure was concerned.

The information concerning racial discrimination was brought to Warden Caraway's attention, but he explained away both the BOP's denial of treatment and its practices. An August 15, 2014 email attached as an exhibit from Warden Caraway discusses a medical report cited by Plaintiff, and states that: "This means in order for you to be a candidate [for treatment with Interferon], you must have a repeat liver biopsy and laboratory testing completed to rule out other diagnoses. Then if you meet the criteria for medication, a treatment plan can be discussed. This is in no way related to your race." (ECF No. 1-9, p. 1.)

///

///

Plaintiff alleges he has suffered emotional distress, fear, loss of sleep, mistrust, deterioration of the liver, humiliation, loss of future income, medical expenses, loss of sex drive, fractured spine, and loss of mobility in hand and back. Plaintiff further alleges that his life expectancy has been severely shortened, and he will experience unnecessary pain and suffering, and incur substantial medical costs and expenses for the treatment of Hepatitis C and its affiliated symptoms, all of which would have been avoided through proper administration of Interferon while he was a federal prisoner.

Plaintiff seeks $2M in compensatory damages for the refusal to treat his Hepatitis C, and $2M in damages for the injuries and damages from the physical attack on June 7, 2011. He also seeks punitive damages.

## III. Discussion

### A. Pleading Standards

#### 1. Federal Rule of Civil Procedure 8

Pursuant to Federal Rule of Civil Procedure 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. Id.; see also Twombly, 550 U.S. at 556–557; Moss, 572 F.3d at 969.

Plaintiff's complaint does not include a short and plain statement of his claims. Instead, it is a lengthy narrative detailing various events taking place from 2007 to 2014, regarding various events involving various people, while Plaintiff was housed at several different institutions. Plaintiff has also pieced together what appears to be three different complaints drafted at different times into one document. The complaint also contains conclusory statements, conjecture, and assumptions of fact, such as assertions of conspiracy.

///

///

6

2. **Federal Rules of Civil Procedure 18 and 20**

Plaintiff asserts numerous allegations against different defendants based on different, unconnected events. Plaintiff may not bring unrelated claims against unrelated parties in a single action. Fed. R. Civ. P. 18(a), 20(a)(2); Owens v. Hinsley, 635 F.3d 950, 952 (7th Cir. 2011); George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff only may bring a claim against multiple defendants so long as (1) the claim arises out of the same transaction or occurrence, or series of transactions and occurrences, and (2) there are commons questions of law or fact. Fed. R. Civ. P. 20(a)(2); Coughlin v. Rogers, 130 F.3d 1348, 1351 (9th Cir. 1997); Desert Empire Bank v. Insurance Co. of North America, 623 F.2d 1371, 1375 (9th Cir. 1980). Only if the defendants are properly joined under Rule 20(a) will the Court review the other claims to determine if they may be joined under Rule 18(a), which permits the joinder of multiple claims against the same party.

Plaintiff may not pursue claims for relief in this action arising from events which occurred outside of this district at other institutions. Plaintiff may only proceed on claims which accrued following his transfer to USP Atwater. If Plaintiff wishes to impose liability under Bivens for the events which occurred at USP Florence, FCC Butner, USP Terre Haute, or elsewhere, he must file suit in the jurisdictions for those institutions.

Further, even with regards to events at USP Atwater, Plaintiff cannot bring claims against certain defendants related to his medical treatment, and other defendants regarding the June 7, 2011 attack by the Mexican Mafia, in the same action. As explained in more detail below, if Plaintiff elects to amend his complaint, he must decide which incidents and which defendants he seeks to pursue in this action. Plaintiff is not precluded from filing separate actions against unrelated defendants involving different incidents.

B. **Legal Standards**

1. **Liability Against BOP**

To the extent Plaintiff seeks to name BOP as a Defendant, he may not pursue a claim against a federal agency under Bivens. FDIC v. Meyer, 510 U.S. 471, 486, 114 S. Ct. 996, 127 L. Ed. 2d 308 (1994); see also Ibrahim v. Dep't of Homeland Sec., 538 F.3d 1250, 1257 (9th Cir. 2008) ("no Bivens-like cause of action is available against federal agencies or federal agents sued in their official

capacities"). Accordingly, Plaintiff's complaint fails to state a <u>Bivens</u> claim against the Bureau of Prisons.

## 2. Deliberate Indifference to Serious Medical Needs

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 104, S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976)). Plaintiff must show (1) a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) defendant's response to the need was deliberately indifferent. <u>Jett</u>, 439 F.3d at 1096; <u>Wilhelm v. Rotman</u>, 680 F.3d 1113, 1122 (9th Cir. 2012).

Deliberate indifference is shown where the official is aware of a serious medical need and fails to adequately respond. <u>Simmons v. Navajo County, Ariz.</u>, 609 F.3d 1011, 1018 (9th Cir.2010). "Deliberate indifference is a high legal standard." <u>Simmons</u>, 609 F.3d at 1019; <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1060 (9th Cir.2004). The prison official must be aware of facts from which he could make an inference that "a substantial risk of serious harm exists" and he must make the inference. <u>Farmer v. Brennan</u>, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).

Plaintiff has not stated a claim against Defendant Rios for deliberate indifference to a serious medical need in violation of the Eighth Amendment. Plaintiff only makes a conclusory allegation that Defendant Rios knew Plaintiff's affliction, but does not explain what that Defendant knew about the risk to Plaintiff from any failure to treat, and how that Defendant failed to adequately respond.

Plaintiff has not named Clinical Director Jon F. Franco, M.D., as a defendant, but to the extent he seeks to state a claim against Dr. Franco, he has not done so. Plaintiff has alleged that Dr. Franco designated him not to be treated using Interferon, suggesting a disagreement with Dr. Franco's treatment recommendation. When a plaintiff disagrees with the course of treatment, the plaintiff "must show that the course of treatment was medically unacceptable under the circumstances and that the defendant chose this course in conscious disregard of an excessive risk to plaintiff's health." <u>Jackson v. McIntosh</u>, 90 F.3d 330, 332 (9th Cir. 1996).

///

As currently pleaded, Plaintiff's allegations are inadequate to show that Dr. Franco's treatment recommendation was medically unacceptable under the circumstances, or was done in conscious disregard of an excessive risk to Plaintiff's health.

### 3.  Eighth Amendment – Failure to Protect

Plaintiff asserts claims against Defendants Rios, Saragosh, and Estrada for failing to protect him from the beating he suffered on June 7, 2011 by members of the Mexican Mafia. The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2005). Prison officials must take reasonable measures to guarantee the safety of the inmates. Farmer, 511 U.S. at 832-33, 114 S. Ct. at 1976 (internal citations and quotations omitted). In a "failure-to-protect" Eighth Amendment violation claim, an inmate must show that a prison official's act or omission (1) is objectively, sufficiently serious, and (2) the official is deliberately indifferent to inmate's health or safety. Id. at 834, 1977; Hearns v. Terhune, 413 F.3d 1036, 1042 (9th Cir. 2005). The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation where prison officials know of and disregard a substantial risk of serious harm to the plaintiff. E.g., Farmer, 522 U.S. at 847, 114 S. Ct. at 1984; Hearns, 413 F.3d at 1040.

Plaintiff has stated cognizable claims against Defendants Rios, Saragosh, and Estrada for the failure to protect him from the initiation of a beating on June 7, 2011, by members of the Mexican Mafia.

### 4.  Fifth Amendment – Equal Protection

Plaintiff asserts that he was treated differently from other inmates regarding the provision of Interferon, in violation of his equal protection rights.  The Due Process Clause of the Fifth Amendment "subjects the federal government to constitutional limitations that are the equivalent of those imposed on the states by the Equal Protection Clause of the Fourteenth Amendment."  Consejo de Desarrollo Economico de Mexicali, A.C., v United States, 482 F.3d 1157, 1170 n.4 (9th Cir. 2007). The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439, 105 S.Ct. 3249 (1985); Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1123 (9th Cir. 2013); Furnace v. Sullivan, 705

F.3d 1021, 1030 (9th Cir. 2013); Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008). An equal protection claim may be established by showing that Defendants intentionally discriminated against Plaintiff based on his membership in a protected class, Hartmann, 707 F.3d at 1123; Furnace, 705 F.3d at 1030; Comm. Concerning Cmty. Improvement v. City of Modesto, 583 F.3d 690, 702-03 (9th Cir. 2009); Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003); Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Engquist v. Oregon Dep't of Agriculture, 553 U.S. 591, 601-02, 128 S.Ct. 2146 (2008); Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

Here, Plaintiff's allegations do not state an equal protection claim as he has not provided sufficient facts demonstrating that he was intentionally discriminated against based on his membership in any protected class, or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. Plaintiff's allegations that he was denied Interferon due to race or deportation status are vague and conclusory. Plaintiff alleges a BOP policy, but without any information about the policy, including whom applied it to Plaintiff. Further, although he alleges whites received Interferon, he has not alleged enough factual detail from which the Court could infer that he was similarly situated to such individuals. Also, the exhibits to his complaint that Plaintiff cites in support of this claim discuss the treatment decision as medically-based.

### 5. Conspiracy

An actionable Bivens conspiracy claim requires (1) the existence of an express or implied agreement among the defendants to deprive the plaintiff of his constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement. Ting v. United States, 927 F.2d 1504, 1512 (9th Cir. 1991). Plaintiff makes conclusory allegations of a conspiracy between Defendants Rios, Saragosh, and Estrada and the Mexican Mafia. Plaintiff has not set forth sufficient factual allegations to establish the existence of an express or implied agreement among those defendants to have him harmed by the Mexican Mafia.

///

## IV. Conclusion and Order

The Court finds that Plaintiff has stated a cognizable claim against Defendants Rios, Saragosh, and Estrada for the failure to protect him from the initiation of the June 7, 2011 beating by members of the Mexican Mafia, in violation of the Eighth Amendment. However, Plaintiff has failed to state any other cognizable claims. The Court will grant Plaintiff an opportunity to cure the identified deficiencies which Plaintiff believes in good faith, are curable. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).  Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints). If Plaintiff chooses to amend his complaint, he may not change the nature of this suit by adding new, unrelated claims in his first amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

If Plaintiff does not wish to file an amended complaint and he is agreeable to proceeding only on the cognizable claims identified by the Court, he may file a notice informing the Court that he does not intend to amend and he is willing to proceed only on his cognizable claim. The remaining defendants and claims will then be dismissed, and the Court will provide Plaintiff with the requisite forms to complete and return so that service of process may be initiated.

If Plaintiff chooses to file an amended complaint, Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must also state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 678-89, 129 S. Ct. at 1948-49. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations admitted).

Plaintiff is also reminded that Plaintiff's amended complaint supersedes the original complaint. Lacey, 693 F.3d at 927.  Absent prior court approval, the amended pleading must be complete in itself without reference to any prior pleading. Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;

3. Within **thirty (30) days** from the date of service of this order, Plaintiff must either:

11

        a.     File a first amended complaint curing the deficiencies identified by the Court in this order, or

        b.     Notify the court in writing that he does not wish to file an amended complaint and he is willing to proceed only on the cognizable claims identified above; and

4.    **If Plaintiff fails to comply with this order, this action will be dismissed, without prejudice, for failure to obey a court order and for failure to prosecute**.

IT IS SO ORDERED.

Dated: **July 18, 2016**          /s/ Barbara A. McAuliffe
                                           UNITED STATES MAGISTRATE JUDGE